**Joseph P. CANGE, Plaintiff–Appellee, Cross–Appellant,**

v.

**STOTLER AND COMPANY, Defendant–Appellant, Cross–Appellee.**

**Nos. 88–2382, 88–2628 and 89–1082.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1989.
Decided Sept. 17, 1990.

John G. Jacobs, Jonah Orlofsky, Robert Plotkin, Barbara Smith, and Jeffrey G.

Brown, Plotkin & Jacobs, Chicago, Ill., for Joseph P. Cange.

Thomas F. Kolter, Jeffrey M. Henderson, and Henry K. Becker, Stotler & Co., Chicago, Ill., for Stotler and Co., Inc., an Illinois limited partnership.

Before BAUER, Chief Judge, and WOOD, Jr., Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

We revisit a dispute between an Alaskan investor, Joseph P. Cange, and a commodities futures merchant headquartered in Chicago, Stotler and Company. Mr. Cange has sued Stotler in an attempt to recover losses he suffered from unauthorized trading on his commodities futures account. His suit was originally dismissed by the district court on a motion to dismiss (treated as a motion for summary judgment), because he did not sue within one year of the unauthorized trades, as required by a clause in his customer agreement with Stotler. The trades were charged to his account in September, 1982 and Mr. Cange sued in November, 1984. *Cange v. Stotler and Company Inc.*, No. 85 C 7664, 1986 WL 5644 (N.D.Ill. May 5, 1986).

Mr. Cange appealed, and this court reversed. We held that the contractual limitation clause did not violate public policy, but that Mr. Cange had demonstrated genuine issues of fact which, if resolved in his favor, would establish that Stotler was estopped from asserting the defense of failure to sue within one year. *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 583–93 (7th Cir.1987) ("*Cange I*").

After a bench trial, Judge Leinenweber found that Stotler was estopped from raising the contractual limitation defense. On the merits, he found Stotler liable, awarding Mr. Cange $43,666.79, representing the remaining unpaid balance of losses from the unauthorized trading in his account, plus costs and attorney's fees. In a later order, he allowed $80,218.35 attorney's

fees, with interest through June 23, 1988.[1]

Stotler appealed from the judgment against it. Mr. Cange filed an appeal in order to challenge the denial of punitive damages. Stotler appealed from the order determining the amount of attorney's fees.

## THE FACTS [2]

In January, 1981, Mr. Cange opened a commodities futures trading account with Stotler. He opened the account and conducted his trading through Mr. Wilson, who was Stotler's commodities broker in Anchorage.

In September, 1982, certain trades of gold and silver futures appeared in Mr. Cange's accounts, without his authorization. Resulting losses totalled $59,150.

On the day the first unauthorized trade was made, Mr. Wilson called Mr. Cange and told him that he would be receiving notice of certain trades that had been mistakenly charged to his account, but that he could ignore these notices because the entries would be reversed.

When Mr. Cange received statements from Stotler showing the trades, he promptly contacted Mr. Wilson. Mr. Wilson again told him the trades had been charged in error, and assured him that he could ignore the statements because Stotler would reverse the entries.

In the months that followed, Mr. Cange regularly called Mr. Wilson about the matter and was given the same assurances. Beginning in the spring of 1983, Mr. Wilson told Mr. Cange that the entries had in fact been reversed, and that Mr. Cange simply didn't know how to read the statements. Mr. Cange, a certified public accountant, thought he was reading the statements correctly, but realized he may have missed a statement, or might actually be reading them wrong.

Mr. Cange continued to trade on his account until June of 1983, although with decreasing frequency because he was losing faith in Mr. Wilson's credibility. Tr. 85.

In August of 1983, Mr. Cange had his accountant, Veronica Montgomery, review the account in connection with the preparation of his income tax returns. Tr. 42–43. She concluded, correctly, that the entries had never been reversed. Mr. Cange mailed a letter August 28, 1983, to Stotler in Chicago complaining that the trades had been charged to his account in error, and asking Stotler to reimburse his account "as soon as possible since the amount is sizable." PX 7. Witnesses for Stotler claimed never to have seen the letter.

On August 30, Mr. Cange's accountant met with Mr. Wilson and confirmed that the account still reflected the losses. Mr. Wilson told her, however, that the trades had in fact been authorized by Mr. Cange. Mr. Cange immediately called him. Mr. Wilson admitted that the trades had not been authorized, and promised that the losses would be repaid by crediting Mr. Cange's account at $5,000 per month.

In early September, Stotler sent Mr. Cange a statement from Chicago confirming a credit of $15,483.21. When the October and November statements came without reflecting the promised $5,000 credits, Mr. Cange insisted on a written repayment agreement. On November 11, Mr. Cange and Mr. Wilson executed the Repayment Agreement, which was the subject of Count VII. *See* n. 1, *above.*

## CIRCUIT RULE 36

Judge Leinenweber had granted the dismissal which was reversed in *Cange I.* In that opinion, we directed that "Circuit Rule 36 will apply on remand." This meant on remand the district court was to

---

1.  Judgment in favor of Mr. Cange was based on the first six counts (two under the Commodity Exchange Act and four based on state law). Count VII (also state law) was based on a repayment agreement, dated November 11, 1983, and discussed at pages 593 to 595 of *Cange I.* After trial, however, the court found that plaintiff and Mr. Wilson, who signed the repayment agreement, did not intend to bind Stotler to it. Ac-

cordingly, judgment was entered in favor of Stotler on Count VII, and Mr. Cange did not appeal from this portion of the judgment.

2.  The facts are stated in the light most favorable to Mr. Cange, and are derived from Judge Leinenweber's findings of fact, with additions from the record where noted.

reassign the case for trial before a judge other than Judge Leinenweber unless all parties requested that he try the case.[3] Our direction was overlooked. We brought this matter to counsel's attention at oral argument. Counsel for Stotler appeared unaware of the direction, and counsel for Mr. Cange said that because he was happy to have the case set for trial so quickly, he did not object.

The purpose of Rule 36 is to avoid, on retrial after reversal, any bias or mindset the judge may have developed during the first trial. The rule does not automatically apply where the judgment reversed has not resulted from a trial, but we apply it in our discretion to avoid the operation of bias or mindset which seems likely to have developed from consideration and decision of motions to dismiss or motions for summary judgment and the like. If the effect of our rule be deemed disqualification of the original judge, it is one which the rule permits the parties to waive. The parties here did not join in a request that Judge Leinenweber try the case, but under the circumstances, the result should be the same.

FINDING OF ESTOPPEL NOT CLEARLY ERRONEOUS

In *Cange I* we held that the showings made on the motion for summary judgment demonstrated issues for the trier of fact on the question of estoppel.

The trier of fact could find that it is within the customary authority of an FCM's agent handling a customer's account to make statements of the account's correct balance and to promise refunds for losses from unauthorized trades. Thus the plaintiff's reliance on those statements and promises, notwithstanding contrary figures listed on the account statement issued by Stotler and Company, could be found to be reasonable. As such, the plaintiff's failure to bring suit within the one-year limitations period could be found to be attributable to Wilson's statements, and Stotler and Company would be estopped from asserting the bar of the limitations period.

826 F.2d at 591. *See also* statements concerning the existence of a jury issue on pages 588, 589, 590.

Unless there were material differences between the set of facts presented on the motion for summary judgment, and the facts proved at trial, sufficiency of the evidence to support a finding for plaintiff on these issues would constitute law of the case. No significant differences seem to have appeared.

■ Judge Leinenweber found that Mr. Wilson had made the promises and assurances already referred to, that they were within the scope of Mr. Wilson's inherent and apparent authority, and that Stotler is bound by them. He also found that Mr. Cange forebore initiating litigation because of those promises and assurances. He did not make findings in terms of reliance and whether reliance was reasonable. Certainly, however, Mr. Cange's reliance on Mr. Wilson's assurances is implied in the finding that the assurances caused his forebearance. In the circumstances of the case, and in light of what was said in *Cange I*, we think that the findings that Mr. Wilson's assurances were within the scope of his apparent authority, that they caused Mr. Cange's forebearance, and that Stotler was estopped by them, sufficiently implied a finding that reliance was reasonable.

In this connection, we deem it significant that the judge based his findings of estoppel on two combined grounds—Stotler's deliberate failure to provide Mr. Cange with a copy of its Customer's Agreement, as well as Mr. Wilson's conduct.

■ When Mr. Cange opened his account in January, 1981, he signed Stotler's Customer Agreement. It provided that it did

---

**3.** Circuit Rule 36 provides

**Reassignment of Remanded Cases**

Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case. In appeals which are not subject to this rule by its terms, this court may nevertheless direct in its opinion or order that this rule shall apply on remand.

not become effective until executed in Illinois by a Stotler partner. Mr. Wilson did not give Mr. Cange a copy then, nor did Stotler ever send him one. The judge found that Stotler had a policy of not sending copies to its customers. The provision requiring suit within one year after a claim arises was contained in this Customer Agreement, and no other notice of it was given to customers. As Judge Leinenweber found, "The only place where that provision appeared was in the middle of the fourteenth paragraph of the twenty-two paragraph small-print SCA...." The concept of "reliance" by Mr. Cange on Mr. Wilson's promises in deciding not to sue Stotler within a year of the unauthorized charges is somewhat unrealistic, since Mr. Cange's only exposure to the contractually-defined one-year period was when he signed the customer agreement in early 1981. Perhaps this was the reason Judge Leinenweber chose not to speak in terms of "reliance." In any event, the reasonableness of Mr. Cange's choice not to sue within one year is supported by his ignorance of the one-year limitation, even though technically bound by having signed the contract.

■ Stotler argues that Mr. Cange did not plead as a basis for estoppel Stotler's failure to provide him with a copy of the customer agreement. This argument rests upon the proposition that estoppel is an affirmative defense. Rule 8(c) of the Federal Rules of Civil Procedure does require estoppel, among other affirmative defenses, to be set forth affirmatively "[i]n pleading to a preceding pleading." Thus a defendant is required to set forth estoppel in an answer. A plaintiff, like Mr. Cange, however, is not required to reply to an answer which does not set forth a counterclaim, unless a reply is ordered by the court. Fed.R.Civ.P. 12(a). In this case, defendant initially asserted its limitations defense by motion to dismiss and the plaintiff filed an affidavit in opposition. The affidavit not only set forth the statements and conduct of Mr. Wilson, discussed in *Cange I*, 826 F.2d at 583, but also asserted that Mr. Cange never received a copy of the agreement. When Stotler ultimately answered, Mr. Cange was not required to

file a reply and thus not required to plead that Stotler was estopped from asserting its limitations defense. Stotler's argument has no merit.

Stotler's principal argument is that any implied finding that Mr. Cange's reliance on Mr. Wilson's assurances was reasonable was clearly erroneous. Its argument that Mr. Cange was negligent is only the other side of the same coin.

■ To begin with, both parties have focussed on reliance and reasonableness over too long a period of time. They seem to believe that Stotler could only be estopped from asserting its contractual one-year limitations period if reasonable reliance continued up to a date within one year of the date Mr. Cange began to litigate. This thinking would be consistent with the theory of tolling the one-year contractual limitations period as long as Mr. Cange justifiably relied on Mr. Wilson's assurances of credit or payment.

In *Cange I*, however, we carefully distinguished between equitable *estoppel* and *tolling:*

> Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended.... Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.

826 F.2d at 586 (quoting *Bomba v. W L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir.1978). Thus, once it is established that Mr. Cange reasonably relied on Mr. Wilson's assurances in not filing within the one-year contractual limitation period, a defense based on that period cannot be raised. The only time restraints on the

filing of suit are the applicable statutes of limitation, which everyone agrees Mr. Cange met. This reading of *Cange I* is consistent with the Illinois law of estoppel:

> When an insurance company, by holding out reasonable hope of adjustment, deters an insured from bringing suit within the time limits of the policy, such limitation is thereby waived. [citations omitted] Once the insurer waives the policy limitation provision, the limitation cannot be revived and the case will be barred only by the regular statutory limitation. *Illinois Live Stock Ins. Co. v. Baker*, 153 Ill. 240, 38 N.E. 627.

*O'Brien v. Country Mutual Insurance Company*, 105 Ill.App.2d 21, 245 N.E.2d 30, 32 (1st Dist.1969). *Accord Whitaker v. Illinois Medical Service*, 7 Ill.App.3d 764, 288 N.E.2d 631, 633 (5th Dist.1972).

■ We recognize Stotler's argument that reliance on Mr. Wilson's promises as authorized by Stotler became less sensible as time went on and the promised reversal entries or credits did not appear. Probably loss of confidence in Mr. Wilson caused Mr. Cange to write to Stotler in Chicago on August 28, 1983. Shortly after that, however, Mr. Cange received notice of a credit which took care of some portion of the losses, and about this time, Mr. Wilson made further promises. His credibility could reasonably be thought to be bolstered by the partial credit which had been effected. In any event, bearing in mind that Mr. Cange was unaware of the one-year limitation, and that Stotler had deliberately omitted to give him a copy of the agreement, we do not deem the findings clearly erroneous.

As already explained, events in October, 1983 and later, which might have tended to show further reliance unreasonable, were more than one year after the claim arose, and therefore irrelevant.

## ATTORNEY'S FEES

■ *The Illinois Consumer Fraud Act.* The district court awarded Mr. Cange attorney's fees under Count V of the complaint, after finding that Stotler had violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act), Ill.Ann.Stat. ch. 121½ ¶ 261 *et seq.* Stotler argues that the award of fees was unjustified because Mr. Cange did not prove a violation of the Consumer Fraud Act.

The Consumer Fraud Act outlaws unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce which directly or indirectly affects the people of the State of Illinois. Ill.Ann.Stat. ch. 121½ ¶¶ 262, 261(f). Stotler briefly argues that the unauthorized trades did not affect the people of Illinois, because they were executed on an exchange in New York, and charged to the account of an Alaskan resident. Stotler has already conceded, however, in the Customer Agreement which defines its relationship with Mr. Cange, the effect on Illinois commerce:

> 14 ... Customer hereby expressly acknowledges that ... by virtue of trading commodity futures in the account established hereby, by and through Stotler, Customer is transacting business in the State of Illinois....

Stotler has offered no reason why this clause, which is included to help assure that Illinois is the venue for any disputes arising out of the agreement, no matter where the customer is located, should not also establish, for purposes of suits between it and its customers, that trading on the account has a sufficient effect in Illinois to satisfy the Consumer Fraud Act.

■ Next, Stotler argues that Mr. Cange did not show that the conduct in this case injured consumers generally, rather than just Mr. Cange. Illinois intermediate appellate courts have divided over whether the Consumer Fraud Act requires such a showing. *Compare, e.g., Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist.1983) (requiring general consumer injury); *Warren v. LeMay*, 142 Ill.App.3d 550, 96 Ill. Dec. 418, 429, 491 N.E.2d 464, 475 (5th Dist.1986) (no general injury required). Last year, this court decided that if the Illinois Supreme Court were to face the question, it would hold that the Consumer Fraud Act did require a showing that a

defendant's "misconduct injured consumers generally." *First Comics, Inc. v. World Color Press, Inc.,* 884 F.2d 1033, 1040 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990) (quoting *Jays Foods, Inc. v. Frito–Lay, Inc.,* 664 F.Supp. 364, 369 (N.D.Ill.1987), *aff'd* 860 F.2d 1082 (1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1125, 103 L.Ed.2d 188 (1989)). Mr. Cange argues, however, that Stotler has waived this point by not raising it in the district court.[4]

Stotler's motion to dismiss, answer, and post-trial brief did not contest its liability under the Consumer Fraud Act on the basis of the lack of a general consumer injury. At oral argument before Judge Leinenweber, which followed the submission of post-trial briefs, Stotler's counsel was asked if he had any separate defenses to the pendant causes of action. The only reason Stotler's lawyer advanced that conduct which would make Stotler liable under the other theories would not also make it liable under the Consumer Fraud Act was that the contract between Mr. Cange and Stotler was not a "consumer transaction." He did not mention any requirement of injury to consumers generally. June 17 Tr. at 12–13. Stotler's subsequent brief in opposition to an award of attorney's fees added that an award was improper under the Consumer Fraud Act because the trades did not take place in Illinois, but again, no question regarding the showing of a general consumer injury was raised.

Judge Leinenweber, understandably, did not address the question. Because Stotler neglected ample opportunities to alert the district judge that it contested this difficult issue, and thus to allow him the first chance to consider it, Stotler has waived its right to raise it on appeal. *Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322, 1326 (7th Cir.1989); *David Berg and Co. v. Gatto Intern. Trading Co.,* 884 F.2d 306, 311 (7th Cir.1989); *Winstead v. Indiana Ins. Co.,* 855 F.2d 430, 435 (7th

Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989).

*Reasonableness of Award.* Mr. Cange requested an award of $80,218.35 in attorney's fees and costs, the amount he had actually paid his lawyer. The district court granted the request, noting

> There is some question as to whether [the request] might be a bit high but the evidence is that Mr. Cange paid it, and that is some evidence of reasonableness. So I am going to award the attorney's fees in the amount which was requested.

A–7.

The award properly included compensation for work done on the first appeal, since we have already held that the Illinois Consumer Fraud Act authorizes awarding fees for appellate work. *Bandura v. Orkin Exterminating Co., Inc.,* 865 F.2d 816, 823 (7th Cir.1988) (relying on *Warren v. LeMay, above* ). *But see M & W Gear Co. v. AW Dynamometer, Inc.,* 97 Ill.App.3d 904, 53 Ill.Dec. 721, 731, 424 N.E.2d 356, 366 (4th Dist.1981). That the first appeal was made necessary by a district court error does not relieve Stotler from liability for fees incurred, since the district court's original dismissal of Mr. Cange's case was not *sua sponte,* but was done on grounds urged by Stotler in a motion to dismiss. An award of fees for work done defending Stotler's current appeal is also warranted, since defending this appeal, like prosecuting the original one, is a necessary prerequisite to recovery. *See Warren,* 96 Ill.Dec. at 439, 491 N.E.2d at 485.

Stotler also objects generally to the reasonableness of the amount awarded, noting that it is considerably larger than the compensatory damages. This alone does not make the award unreasonable, *see Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), especially in a case which was dismissed, appealed, remanded, and then tried.

---

**4.** The Illinois legislature prospectively resolved this conflict by amending the Consumer Fraud Act, effective January 1, 1990, to provide that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." Public Act 86–801, § 1, Ill.Rev.Stat. ch. 121½ ¶ 270a(a).

One matter does give us pause. Although Mr. Cange in fact has paid his attorneys $80,216.35 in fees and costs for their work in this case, he paid most of this—$66,397.07—pursuant to a bill which was submitted after the district court awarded Mr. Cange attorney's fees, but before the amount of fees was fixed. His lawyer has stated in an affidavit that the fees award did not influence the bill which was sent Mr. Cange, but it seems possible that the award of fees may have influenced Mr. Cange's willingness to pay in full a bill which was more than he could expect to win in compensatory damages from his suit. (He had only paid $11,178.50 out of $21,134.00 due on his previous bill.)

■ Nonetheless, Stotler has only pointed out one specific example of what it views as an unreasonable expenditure of time—13.8 hours spent in drafting the complaint. Mr. Cange's attorney responds that it included not just time for drafting the complaint, but also for "pretrial investigation [and] review of materials." Cange's brief at 25. This is just the sort of determination which properly is left to the discretion of the district court, and will not be reviewed on appeal. *E.g., State of Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 862 (7th Cir.1981). We find no abuse of discretion in the amount awarded.

## THE CROSS APPEAL

Mr. Cange has filed a cross-appeal from the denial of punitive damages. Stotler argues that we lack jurisdiction to hear the cross-appeal because the notice of that appeal was untimely.

Final judgment was entered on June 21, 1988. Twenty-three days later, on July 14, Stotler filed in the district court a "Motion to Modify Opinion," and that same day served a copy on Mr. Cange's attorney. Six days later, twenty-nine days after judgment was entered, Stotler filed a notice of appeal. Sixteen days after that, on August 4, Mr. Cange filed his first notice of cross-appeal. This notice of cross-appeal was untimely, since both the thirty-day period after entry of judgment and the fourteen-day period after filing of Stotler's notice of

appeal had passed. FRAP 4(a)(1) & (3). Upon Mr. Cange's motion, the district court, without explanation, granted an extension of time to file a new notice of appeal. Mr. Cange did so. Stotler argues that the district court abused its discretion by granting an extension, because Mr. Cange had not shown any excusable neglect for his late filing. *See* FRAP 4(a)(5).

■ In his motion requesting an extension of time, Mr. Cange's lawyer conceded that he "simply miscalculated the due date for the filing of his Notice of Appeal." Doc. #76 at 4. A simple miscalculation, rather than a plausible misconstruction of the law or rules, does not establish excusable neglect. *See Redfield v. Continental Cas. Co.*, 818 F.2d 596, 602 (7th Cir.1987); *Lorenzen v. Emp. Ret. Plan of Sperry & Hutchinson*, 896 F.2d 228, 233 (7th Cir.), *reh'g en banc den.* (1990).

■ Mr. Cange also argued, and argues before this court in support of the district court's decision, that his late filing was excusable because Stotler, by filing a notice of appeal while its "Motion to Modify Opinion" was still pending, created a confusing "ambiguity." According to Mr. Cange, during the period that his cross-appeal should have been filed, it was unclear as to how the district court would characterize Stotler's "Motion to Modify Opinion." The motion did not specify what rule it was brought under; if the district court considered it a *timely* motion under Rule 52(b) (to amend findings) or Rule 59(e) (to alter or amend judgment), the time to file appeals would run from the date of its disposition, rather than from the date of entry of judgment, and so there was no need yet to file a notice of cross-appeal. Indeed, such a notice would be premature and of no effect. FRAP 4(a)(4).

Stotler's motion created no "ambiguity" which could have confused Mr. Cange as to when a notice of appeal should be filed. Were the district court to treat Stotler's motion as a Rule 52(b) or 59(e) motion, it was plainly late. To be timely, such motions must be "made" and "served," respectively, within ten days of judgment (ex-

cluding Saturdays, Sundays, and legal holidays, FRCP 6(a)), but Stotler filed and served this motion on July 14—twenty-three days after judgment.[5] The district court cannot extend the time for these motions. FRCP 6(b). Only a *timely* motion suspends the time for filing notices of appeal. FRAP 4(a)(4); *Browder v. Director, Ill. Dept. of Corrections*, 434 U.S. 257, 264–65, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978); *Wort v. Vierling*, 778 F.2d 1233, 1234 (7th Cir.1985). Mr. Cange knew the motion was untimely if of this type: he pressed this as the primary ground for denying it in his response. Were the district court to treat the motion to modify as brought under some rule other than 52(b) or 59(e), such as Rule 60, it would not affect the time for filing a notice of appeal. FRAP 4(a)(4); *Hough v. Local 134, IBEW*, 867 F.2d 1018, 1019 (7th Cir.1989).

 Furthermore, any supposed "ambiguity" evaporated on Wednesday, July 27, when the district court denied Stotler's motion as untimely.[6] Mr. Cange recognizes that this ruling established that Stotler's notice of appeal was timely and effective, and so Mr. Cange had fourteen days from the filing of that notice to file his notice of cross-appeal. Cange's Brief at 35–36. This allowed him until the next Tuesday, August 2, to file a timely notice of cross-appeal, but such notice wasn't filed until August 4.

Because Mr. Cange did not show excusable neglect, the district court abused its discretion by ordering an extension of time to file. There being no effective extension of filing time, the notice of cross-appeal was untimely, and we must dismiss the cross-appeal for lack of jurisdiction.

## CONCLUSION

We affirm the district court's judgments awarding Mr. Cange damages and attorney's fees (Nos. 88–2382 & 89–1082). We dismiss Mr. Cange's cross-appeal for lack of appellate jurisdiction (No. 88–2628). We grant Mr. Cange's motion for attorney's fees on appeal, insofar as it requests fees for the defense of Stotler's appeals. With respect to costs of the three consolidated appeals, Mr. Cange is allowed one-half his costs, and Stotler none. Mr. Cange should submit along with his bill of costs an itemized statement of reasonable legal fees incurred in defending appeals Nos. 88–2382 & 89–1082.

---

5. *See Sadowski v. Bombardier Ltd.*, 527 F.2d 1132, 1133–34 (7th Cir.1975) (per curiam) (motions under Rule 59(e) are timely if served within ten days of judgment and filed either before or within a reasonable time after service).

6. Mr. Cange's lawyer was not in court when Judge Leinenweber orally denied Stotler's Motion to Modify as untimely. Stotler's lawyer was there, however, and he told Mr. Cange's lawyer of the ruling and its reason that same day. Docs. #81, 78 at 1–2.