Harold S. GOLDBERG, Plaintiff,

v.

KIDDER PEABODY & CO., INC. and Mark Serruto and John Does 1–10 Defendants.

No. 90 Civ. 6919(BSJ).

United States District Court, S.D. New York.

April 8, 1997.

Frohling, Hudak & McCarthy, P.C. by Linda T. McCarthy, Bloomfield, NJ, for Plaintiff.

Kidder, Peabody & Co., Inc. Legal Department by Thomas A. Dubbs and David Rivera, New York City, for Defendants.

## MEMORANDUM & ORDER

JONES, District Judge.

After six years of discovery, this case has become nothing more than the kind of "swearing contest" that *Modern Settings Inc. v. Prudential–Bache Securities, Inc.,* 936 F.2d 640 (2d Cir.1991), seeks to prevent. For the following reasons, defendants motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted. Case dismissed.

## BACKGROUND

Plaintiff is a millionaire physician who has held at least 15 different accounts dozen different securities firms. Although he has been familiar with investment terminology since 1956, his practice is to follow his broker's advice without hesitation.

In April 1986, plaintiff opened a brokerage account (the "Account") with defendant Kidder, Peabody & Co., Inc. ("Kidder"). Defendant Mark Serruto ("Serruto"), a Kidder account representative, oversaw trading in the account.

In order to activate the Account, plaintiff signed Kidder's standard "Customer's Agreement," which states in part:

> Reports of the execution of orders and statements of account made by [Kidder] shall be conclusive if not objected to by written notice delivered to [Kidder] within two business days or ten days, respectively, after delivery or communications of the reports or statements to [plaintiff] by [Kidder].

After he opened his account with Kidder, plaintiff authorized Serruto to effectuate hundreds of trades. In this connection, plaintiff traded based on Serruto's recommendations, treating Serruto like his·"son" and accepting his investment advice without hesitation.

Pursuant to the Customer's Agreement, plaintiff regularly received (1) "reports of the execution of orders" ("Confirmations") and (2) "statements of accounts" ("Account Statements") concerning his Account. The Confirmations confirmed each trade the defendants undertook on his behalf and indicated the trade and settlement date of each transaction, the number and price of the shares traded, and the commissions earned. The Account Statements memorialized the accounts monthly activity.

Plaintiff made various handwritten notes—including calculations—on both the Confirmations and the Account Statements. Additionally, he used the documents to prepare detailed, handwritten profit and loss ledgers.

Three of the trades that appeared on both the Confirmations and Account Statements plaintiff received included a November 7, 1989 purchase of American Express shares, an April 10, 1990 purchase of L.A. Gear shares, and a December 18, 1990 purchase of Coca Cola shares (collectively, the "Disputed Transactions"). It is undisputed that plaintiff never made any written objections to these trades. Rather, plaintiff executed these trades "without hesitation" pursuant to Serruto's suggestion.

Due to market fluctuations, plaintiff lost over $300,000 on the Disputed Transactions. As a result, he filed this suit on _____ 199_ [1], complaining of irregularities and manipulation surrounding the transactions and asserting claims for common law fraud, negligence, breach of contract, conversion, as well as violations of the federal RICO statute and the federal securities laws.[2]

## DISCUSSION

### I. Legal Standard

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. To grant a motion for summary judgment, the Court must determine that a reasonable fact finder could not find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) Thus, the moving party

bears the burden of proving the absence of a genuine issue of material fact. *Adickes v. S. H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets this burden, the burden shifts to the non-moving party to present evidence of specific facts—as opposed to mere allegations, denials, or ephemeral assertions—showing that a genuine issue exists. *Anderson,* 477 U.S at 252, 256. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248.

The procedural rules governing summary judgment cannot properly be applied without first examining the substantive law underlying the litigation. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). Thus, the Court turns to the law governing this case.

### II. The Customer Agreement's Written Notification Clause

Defendants argue that the Customer Agreement bars all of defendant's claims. Plaintiff disagrees, stating that the agreement is inapplicable.

■ The Customer Agreement provides that the confirmations and monthly statements regarding plaintiff's account "shall be conclusive" unless objected to in writing within ten days after transmittal. Such a clause insures that disputes concerning brokerage account activity are not relegated to "swearing contests" between broker and customer. *Modern Settings Inc. v. Prudential–Bache Securities, Inc.,* 936 F.2d 640, 645–46 (2d Cir.1991).[3] Absent a broker's "own as-

1. This action originally was filed in New York Supreme Court and asserted claims that are no longer a part of this case. On October 25, 1990, defendants removed the case to federal court. On November 22, 1991, plaintiff amended his complaint to assert the claims based on the Disputed Transactions. On July __, 1993, the Court granted partial summary judgment to defendants, allowing only the claims based on the Disputed Transactions to survive. In March 1994, plaintiff sought to amend his complaint again to assert a host of securities violations and breaches of common law. On June 17, 1994, leave to amend was denied on the ground that the claims were time barred.

2. Plaintiff's memorandum of Law in Opposition to the Motion for Summary Judgment suggests that the American Express transaction constituted a violation of section 8(c) of the 1934 Act (15 U.S.C.(1994 Ed.) § 78a et seq.) and section 206(3) of the Investment Advisor's Act (15 U.S.C.A. § 80b–1 et seq.). As these claims were not asserted in the Amended Complaint, this Court will not consider them viable causes of action here.

3. *See also Leviten v. Bickley, Mandeville & Wimple,* 35 F.2d 825, 827 (2d Cir.1929) ("The principle of ratification has frequently been applied in litigation involving the unauthorized purchase or

surances or deceptive acts" forestalling the customer's filing of a required written complaint, the clause is enforceable, *Id.* at 645–46 (citing cases).[4]

Here, plaintiff regularly received confirmations and monthly account statements memorializing the activity on his account. In this connection, he received a confirmation and an account statement for each of the transactions about which he now complains. Plaintiff never objected in writing to any of them. In fact, he submitted an affidavit stating that he accepted each of the trades "without hesitation."

Nonetheless, plaintiff posits a muddle of arguments exhorting the inapplicability of the Customer Agreement's written objection requirement and insists that his cause of action is meritorious. All of plaintiff's contentions share the common characteristic of being unconvincing. To the extent it is able to parse plaintiff's arguments into an organizable structure, the Court deals with each *seriatim.*

### 1. *Request for more discovery*

After nearly six years of discovery, plaintiff argues that he needs more time to gather material relevant to his case. Accordingly, he asserts a defense pursuant to Fed. R.Civ.P. 56(f),[5] claiming that summary judgment is inappropriate at this stage because he has yet to obtain facts essential to his

opposition, namely, whether plaintiff's claims are foreclosed by *Modern Settings,* 936 F.2d 640.[6]

Preliminarily, it should be noted that this is not the first time that plaintiff has sought more time for discovery. In March 1996—after the instant motion had been filed—plaintiff filed a motion to extend the time for discovery. This Court denied that motion, recognizing that plaintiff had failed to comply with a series of discovery deadlines[7] and finding that plaintiff had failed to assert any cognizable basis for its request.

■■■■ A party seeking additional discovery under Rule 56(f) must inform the court by affidavit "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995) (quotation omitted). Thus, mere hopes that more evidence will appear is insufficient to justify denying summary judgment.

Applying this standard, plaintiff's request to transform discovery into a deathless process is denied. First, plaintiff fails to submit an affidavit regarding his need for more discovery altogether. Rather, he asserts his Rule 56(f) defense in his memorandum of law

---

sale of stocks held on margin by brokers...."); *In re Drexel Burnham Lambert Group, Inc.,* 157 B.R. 539, 543 (S.D.N.Y.1993) ("[t]he requirement of prompt written notice of repudiation of trades has long stood as a pillar in the law of customer-broker relations").

4. New York's Uniform Commercial Code also requires a brokerage customer to object in writing within 10 days after receipt of a confirmation. N.Y.U.C.C. § 8–319 (McKinney 199_).

5. Rule 56(f) provides:
   Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

6. After the Court held oral argument on this motion, plaintiff submitted a letter-brief stating

that he was unaware that the written objection requirement might be a concern in this case and arguing for more time to complete discovery on the issue. (See Letter to Court, dated Feb. 20, 1997.) Additionally, he states that his supplemental affidavit—submitted after the motion was fully briefed—provides his full testimony on the matter, suggesting that the affidavit he originally filed in opposition to the motion did not confront this issue. (*Id.*) Although plaintiff was aware that this motion revolved around the written objection requirement when he submitted his original affidavit in opposition to the instant motion (defendant's motion papers rely on *Modern Settings* ) and although plaintiff's first affidavit clearly addresses the matter, the Court accepts his supplemental affidavit.

7. *See, e.g., Goldberg v. Kidder, Peabody & Co. et al.,* 90 Civ. 6919 (Jan. 4, 1994) (discussing plaintiff's failure to comply with discovery order).

in opposition to the instant motion. A memorandum, however, is not a substitute for an affidavit, *Burlington Coat Factory. Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985), and this failure is enough to reject the Rule 56(f) defense. *Id.* (citing cases).

Moreover, plaintiff's memorandum fails to assert valid reasons justifying his failure to obtain the necessary discovery in the six years this case has been pending. Plaintiff only makes broad assertions regarding unresolved issues, boldly asserting—without support—that the defendants have stonewalled him in regard to certain discovery demands and that certain avenues of discovery were only recently revealed to him. Nowhere does he catalogue his attempts (if any) to obtain the discovery or explain how the material sought might prove relevant to the pending motion. Thus, his speculative request for further discovery is denied. *See Baylis v. Marriott Corp.*, 906 F.2d 874, 878 (2d Cir.1990) (rejecting plaintiff's contention that district court should have permitted more discovery where action had been pending since 1985); *Aniero Concrete Co. v. N.Y. City Construction Authority*, 1997 WL 3268 (S.D.N.Y. Jan. 3, 1997) (rejecting plaintiff's Rule 56(f) defense where party submitted no affidavit and only broadly alleged that it had not had sufficient opportunity "to examine documents or conduct depositions").

### 2. *Plaintiff's general claims concerning the enforceability of the Customer Agreement*

Plaintiff argues that the Customer Agreement is not enforceable because (1) neither Serruto nor another Kidder representative signed it, (2) it contains ambiguous language, and (3) it purports to shorten the otherwise applicable limitations period.

■ These charges are plainly wrong. No party contemplated that Kidder had to sign the agreement; although printed by Kidder, the document does not contain a signature line for a Kidder representative Rather, it is clear that Kidder intended the document to communicate its offer to open an account. Thus, only plaintiff's signature was required.[8] Moreover, the document's terms neither are ambiguous nor improperly shorten the applicable statute of limitations. In fact, the terms nearly mimic those found enforceable in *Modern Settings*, 936 F.2d at 645–46.

### 3. *Plaintiff's claim that he is ignorant*

■ Plaintiff contends that, as a layperson, he lacked the skill to interpret the Confirmations and Account Statements and is thus relieved from the Customer Agreement's written objection requirement. *See Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1200 (8th Cir.1982) (discussing situations in which customers are unable to read confirmation slips or account statements). The documents, however, clearly set forth the trades. No knowledge of finance, investment, or arcane science is needed to read them; only basic literacy is required. Plaintiff is an educated man with 15 accounts at a dozen different firms. He not only understood the documents—marking them with calculations and various marks—but also used them to compose personal profit and loss statements. His plea, therefore, is entirely unconvincing. *See Richardson Greenshields Secs. v. Lau*, 819 F.Supp. 1246, 1253 (S.D.N.Y.1993) ("a commodities customer need not be an expert or a financial genius in order to trade on the commodities markets").

### 4. *Plaintiff's claim that the written objection requirement should not apply*

Plaintiff contends that the doctrine of equitable estoppel excuses him from the Customer Agreement's written objection requirement. Thus, he attempts to squeeze himself into *Modern Settings* warning that a broker's "assurances or deceptive acts" forestalling a customer's filing of a written complaint may estop the broker from raising a written ob-

---

8. Since plaintiff never stated a desire not to be bound absent a Kidder representative's signature, his signature is sufficient to constitute acceptance of the document's terms. *See Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970)(contract may exist where only one party signs unless a party expressed intent to be bound by written contract signed by both parties).

jection requirement. In striving to shoehorn himself into this exception, however, plaintiff only achieves a series of arguments that are both indirect and elusive.

First, although plaintiff concedes that he accepted without hesitation Serruto's recommendations regarding the American Express, L.A. Gear, and Coca–Cola stocks, he claims that this acceptance was given involuntarily. Specifically, he states that Serruto exercised a strange control over him, convincing him to purchase and keep stock he did not really want. The only evidence plaintiff presents on this point are his own statements that he treated Serruto like a son and accepted his investment advice without hesitation. These statements do not demonstrate that Serruto was plaintiff's Svengali, however. They merely show that plaintiff trusted his broker.[9] Additionally, it is clear that plaintiff was aware of and understood the activity in his Account; he composed meticulous profit and loss statements. Thus, plaintiff's argument that the trades were "involuntarily authorized" is unavailing.

Second, plaintiff contends that Serruto guaranteed losses on other investments, nowhere mentioned in the Amended Complaint but which he now states were also unauthorized. These acts, plaintiff states, led him to believe that Serruto would guarantee any losses on the Disputed Transactions and induced him not to complain about them. This argument is completely without merit. Even accepting as true that Serruto promised to guarantee losses on certain trades, there is no evidence that plaintiff ever contemplated complaining in writing once he realized that the guarantee was a sham, let alone that defendants "forestalled" him from doing so.

Third, plaintiff argues that the defendants are estopped from relying on the written objection requirement because their actions forestalled plaintiff from making the required complaints. The Court considers this argument in the context of each stock.

### (a) The American Express stock

■ With regard to the American Express transaction, plaintiff claims—without pointing to any evidence beyond his own statements—that Serruto failed (1) to make good on his promise to guarantee any losses on the trade and (2) to effectuate plaintiff's desire to sell the shares after the purchase was effected. In other words, plaintiff complains of actions taken after the trade was effectuated.

As a matter of law, this matter is disposed of by the Customer Agreement's written objection requirement. Even assuming that plaintiff's allegations are true—despite the dearth of evidence presented—the Customer Agreement required plaintiff to object in writing within ten days after receiving the Confirmations or Account Statements reporting the objectionable activity. There is no evidence that defendants impaired plaintiff's review of the Confirmations or Account Statements; plaintiff kept detailed records of his investments and knew whether Serruto had sold the stock or guaranteed any losses. Similarly, there is no evidence that plaintiff ever contemplated complaining in writing, let alone that defendants forestalled the making of a written complaint.[10] As a result, the reports contained in the Confirmations and Account Statements are, conclusive. See In re Drexel Burnham Lambert Group, Inc., 157 B.R. at 547 (broker's oral assurances that stock will be sold at a certain time does not excuse a customer's subsequent failure to file a timely written objection) (citing Modern

---

9. Plaintiff's lawyer admits as much, stating that plaintiff regarded Serruto as an securities expert. (Letter to Court from John B.M. Frohling, dated Feb. 20, 1997, at 3.)

10. Plaintiff avers in a disputed affidavit that Serruto asked him not to complain about the trade to his superiors. The affidavit does not, however, speak to the Customer Agreement's written objection requirement. Rather, it is emblematic of the nature of this case: a "swearing contest" between a broker and an unhappy customer—

just the kind of case foreclosed by Modern Settings. See In re Drexel Burnham Lambert Group, Inc., 157 B.R. at 547 (stating that a broker's oral assurances regarding stock did not excuse customer from the written objection requirement). Moreover, "it is well established that a disputed, uncorroborated affidavit standing alone is insufficient as a matter of law to raise an issue of material fact." R.B. Ventures Ltd. v. Shane, 91 Civ. 5678, 1996 WL 233690 (S.D.N.Y. May 7, 1996)(quotation omitted).

*Settings* ).[11]  Accordingly, defendants are granted summary judgment on all claims based on the American Express stock.

### (b) *The L.A. Gear stock*

■ As with the American Express trade, plaintiff states that defendant's conduct following the purchase constituted fraud and negligence.  Specifically, plaintiff states that Serruto managed the stock in an unauthorized manner and failed to institute a stop-loss order.

Again, plaintiff's claims are easily discarded.  Plaintiff received Confirmations and Account Statements memorializing the activity on his L.A. Gear stock.  Plaintiff failed, however, to commit any complaints regarding the L.A. Gear stock in writing.  In this connection, he presents no credible evidence demonstrating that defendants prevented him from making a written complaint, or even that plaintiff desired to make such a complaint.

Accordingly, estoppel does not apply.  As a matter of law, plaintiff ratified the transactions reported.[12]  *See Modern Settings,* 936 F.2d at 644; *In re Drexel Burnham Lambert Group, Inc.,* 157 B.R. at 547.  Thus, summary judgment is granted against plaintiff on his claims based on the L.A. Gear stock.

### (c) *The Coca–Cola stock*

■ In regard to the Coca–Cola trade, plaintiff claims that Serruto (1) misled him into authorizing the trade, (2) negligently

failed to monitor and to institute a stop-loss order on the stock, and (3) failed to fulfill a promise to guarantee certain losses on the stock.

As with the American Express and L.A. Gear shares, plaintiff did not complain in writing about any of this activity despite the fact that he received the relevant Confirmations and Account Statements. . Additionally, he presents no evidence suggesting that any defendant forestalled him from making a written complaint concerning the trade or the handling of the stock once it was in his portfolio.  Accordingly, he fails to support any argument that the Confirmation Agreement's written objection requirement should not operate in regard to the purchase of the stock.[13]  *See Modern Settings,* 936 F.2d at 646; *In re Drexel Burnham Lambert Group, Inc.,* 157 B.R. at 547.  Therefore, summary judgment is granted against plaintiff on his claims based on the Coca–Cola stock.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted.  This swearing contest is over.

---

11.  *Cange v. Stotler and Co.,* 913 F.2d 1204 (7th Cir.1990), relied on by plaintiff, is inapposite.  In *Cange,* a broker convinced the plaintiff not to complain about unauthorized futures trading, informing him that he would reverse the trades.  The broker gave the plaintiff a partial credit for the trades, but never fully effectuated the reversal.  913 F.2d at 1206–08.  The Court found that such circumstances, combined with the plaintiff's inability to read the brokerage statements, estopped the defendant brokerage firm from raising as a defense the plaintiff's failure to sue within one year of the trades, as required by an agreement between the parties.  *Id.* at 1207–10.  In this case, however, plaintiff cannot make any of these arguments.  First, he was never reimbursed for any of the Disputed Transactions.  Second, plaintiff could read the Confirmations and Account Statements, and in fact used them to compose a detailed ledger.  Lastly, there is no evidence beyond plaintiff's uncorroborated statements demonstrating that the plaintiff objected to

the way the defendants managed his account or that the defendants convinced plaintiff not to voice these objections in writing.

12.  In fact, in a model instance of ratification, plaintiff testified that he accepted Serruto's recommendation not to sell the L.A. Gear stock even after he orally complained that its value had declined.

13.  In his latest submission, plaintiff argues without citation to any authority that he was relieved of his duty to complain in writing about the Coca Cola trade because he later closed his account.  Closing an account, however, does not in and of itself demonstrate unhappiness with a particular transaction.  In fact, a customer might close a brokerage account for a variety of reasons.  In any event, it is not evidence that he ever contemplated complaining about his account, in writing or otherwise.